**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**UNITED STATES**                                    **PLAINTIFF/RESPONDENT**


**V.**                        **No.  5:05-CR-50016-JLH**


**ISRAEL SERRANO-GUERRERO**                        **DEFENDANT/PETITIONER**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the court is the Petitioner's Petition for Writ of Error Coram Nobis (Doc. 18) filed

May 15, 2009.  The United States of America filed a Response (Doc. 25) on June 16, 1009.  The

Petitioner has not filed a Reply  and the matter is ready for Report and Recommendation.

**I.  Background**

Petitioner Israel Serrano-Guerrero (hereinafter, the "Petitioner") was indicted by a Grand

Jury on or about May 9, 2005 for a violation of one count of 18 U.S.C. § 1546(b), that being

Misuse of a Social Security Number and False Attestation. (Doc. 7) The defendant pled guilty to

the indictment, and on August 12, 2005, was sentenced to time served (which was approximately

four and one-half months), three years supervised release, and ordered to pay a $100 special

assessment. (Doc. 15). The Judgment states in part, "It is anticipated that the defendant will be

deported by U.S. Immigration and Customs Enforcement following the term of imprisonment."

(Doc. 15, page 3).

Immediately following his sentencing in the present case, he was taken into custody by

ICE for removal proceedings. See Exhibit 1, par. 4 (Doc. 25-1). The immigration judge in his

oral finding rendered on October 5, 2006 stated that the Petitioner "does admit that he used a

-1-

false Social Security number, but he denies that he knowingly made a false claim that he was a United States citizen". (Doc. 18-11, page 3) The judge went on to state that "the Court has dealt with some of these cases in the past, and frankly, this Court is extremely reluctant to find that anyone has made a false claim to a United States Citizen status solely based on I-9 filing. In many cases, it's not really clear how carefully the Respondent read the document, or even where he could understand the document or not. And I have been fairly liberal in finding that a false claim is not made. However, in this case, I'm presented with a conviction document from the United State District Court, where very specific allegation were made against the Respondent, and he plead guilty to those allegation." (Doc. 18-11, page 3) The immigration judge stated that he would not go behind the conviction and the Petitioner was estopped from denying what he has already admitted in Federal District Court. (Doc. 19-11, page 4)

The Petitioner was ordered removed to Mexico on October 5, 2006. Exhibit 1, par. 5. (Doc. 25-1) He appealed the decision of the Immigration Judge to the Board of Immigration Appeals, and on July 31, 2008, his appeal was dismissed by the Board. See Exhibit 1, par. 5. (Doc. 25-1).

Petitioner then filed this Petition for Writ of Error Coram Nobis (Doc. 18) on May 15, 2009, requesting this court to set aside his previous guilty plea and be afforded a full and fair hearing or, in the alternative, be allowed to plead to a modified indictment, one that *would not subject Petitioner to permanent removal from the United States*. (Doc. 18, par. 28). It appears Petitioner is advancing four key claims in support of his petition for the writ, that being: (1) that because his defense counsel did not explain the collateral consequences of his plea, his plea was not "voluntary, intelligently and knowingly" negotiated; (2) that because the court did not explain

the collateral consequences of accepting his plea, his due process was violated; (3) that there is

no substantial evidence that he falsely claimed to be a citizen of the United States; and (4) that

because a Miranda violation occurred, his plea was not a knowing and intelligent waiver of right

to a jury trial.

Additionally, on May 26, 2009, the Petitioner filed a Motion for Judicial

Recommendation Against Deportation. (Doc. 20). The United States, on May 28, 2009, filed its

response to Petitioner's motion. (Doc. 22). Thereafter, on May 29, 2009, this court issued an

Order denying the Petitioner's Motion for Judicial Recommendation Against Deportation. (Doc.

24).

## II. Discussion

Coram nobis relief may lie under certain circumstances where a petitioner has completed

his sentence and is no longer in federal custody. *See, e.g., United States v. Little*, 608 F.2d 296,

299 n. 5 (8th Cir.1979); *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir.2001)(the writ is

available only when relief under 28 U.S.C. § 2255 is unavailable which generally occurs when

the petitioner has completely served his sentence and is no longer "in custody" for the purposes

of § 2255.) The jurisdiction provided by the writ is necessarily of limited scope.  It has been

black letter law since the Supreme Court recognized the coram nobis writ in *United States v.*

*Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), that a reviewing court should grant

the writ "only under circumstances compelling such action to achieve justice." Id. at 511, 74

S.Ct. at 252. Coram nobis should be granted only "to correct errors of the most fundamental

character where the circumstances are compelling to achieve justice." *Correa-Negron v. United*

*States*, 473 F.2d 684, 685 (5th Cir.), cert. denied, 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88

(1973).

The reason this rigorous burden of proof is placed on a coram nobis petitioner is obvious. All collateral attacks significantly, and detrimentally, impact on society's interest in the finality of criminal convictions. Inroads on the concept of finality tend to undermine confidence in the integrity of our procedures. Moreover, increased volume of judicial work associated with the processing of collateral attacks inevitably impairs and delays the orderly administration of justice. Because there is no limit on the time when a collateral attack may be made, evidentiary hearings are often inconclusive and retrials may be impossible if the attack is successful.

*U.S. v. Mandel*  862 F.2d 1067, *1076 (C.A.4 (Md.),1988)

**A.  The Petitioner contends that his defense counsel did not explain the collateral consequences of his plea and that his plea was not "voluntary, intelligently and knowingly" negotiated**.

Where counsel has not merely failed to inform, but has effectively misled, his client about the immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence. *U.S. v. Kwan*  407 F.3d 1005, 1015 (C.A.9 (Cal.),2005.  That is not the case here.  The judgement specifically stated that it was "anticipated that the defendant will be deported by U.S. Immigration and Customs Enforcement following the term of imprisonment."  (Doc. 18-2, p. 3) He was released to the custody of the ICE agency upon his plea (Doc. 16) and he was ordered deported. (Doc. 18-4).

In *Gumangan v. United States*, 254 F.3d 701, 706 (8th Cir.2001), an alien charged with conspiracy to commit bank fraud alleged her counsel misadvised her that if she pled guilty she had a good chance of successfully contesting deportation. She brought a post-conviction action

under 28 U.S.C. § 2255 claiming ineffective assistance of counsel alleging her plea was involuntary because counsel did not inform her that she would be subject to mandatory deportation upon pleading guilty. In holding that counsel was not ineffective for allegedly advising her that she might successfully contest deportation if she pled guilty, the court found there was no prejudice in her pleading guilty instead of going to trial because she would have faced deportation upon conviction by a jury. Id. at 706 (finding that defendant's guilt was overwhelming). The Gumangan court also recognized that, "[s]everal circuits have held that failure to advise a defendant of the prospect of deportation does not constitute ineffective assistance of counsel." Id. (citing *United States v. Banda*, 1 F.3d 354, 355 (5th Cir.1993); *United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir.1988)).

Those circuits having addressed the issue have unanimously held that an attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel. See *Santos-Sanchez v. United States*, 548 F.3d 327, 334-36 (5th Cir.2008); *United States v. Krejcarek*, 453 F.3d 1290, 1296-97 (10th Cir.2006); *United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir.2003); United States v. Gonzalez, 202 F.3d 20, 25 (1st Cir.2000); *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir.1989); *United States v. Campbell*, 778 F.2d 764, 768-69, 11th Cir.1985). The unanimous reasoning behind these holdings is that the Sixth Amendment requires defense counsel to explain only the direct consequences of a guilty plea. Id.; See *Brady v. United States*, 397 U.S. 742, 755 (1970) (noting Due Process Clause is satisfied when "'[a] plea of guilty [is] entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel'" (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957)). And these circuits have

held that the deportation or immigration consequences resulting from convictions are collateral consequences. *Id*. Thus, because deportation is a collateral consequence, an attorney's failure to advise his client about the collateral consequences of a guilty plea cannot constitute ineffective assistance of counsel.

**B. The Petitioner contends that because the court did not explain the collateral consequences of accepting his plea, his due process was violated.**

In order to be constitutionally valid, "a guilty plea must be knowing, voluntary, and intelligent." *United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir.1999). A defendant is only required to be "fully aware of the direct consequences" of a guilty plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). "[D]eportation is viewed as a collateral consequence of a guilty plea, and does not need to be explained to ensure voluntariness of the plea.*" Delgado v. United States*, 1997 WL 33135309, *1 (D.N.D. Dec 10, 1997) (citing *United States v. Campbell*, 778 F.2d 764, 767 (11th Cir.1985); See *Santos-Sanchez v. United States*, 548 F.3d 327, 336-37 (5th Cir.2008). As such, the majority of circuits have held that district courts need not advise defendants of the deportation or immigration consequences of their guilty pleas. See *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir.2002) ("defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea.") (quoting *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994)); *United States v. Amador-Leal*, 276 F.3d 511 (9th Cir.2002) (held that potential immigration consequences were collateral consequences of plea, so that district court was not required under due process clause, or Federal Rules of Criminal Procedure, to first advise defendant of those consequences in order for plea to be deemed knowing and

-6-

voluntary); *United States v. Gonzales*, 202 F.3d 20, 28 (1st Cir.2000) ("because deportation is a collateral consequence of a guilty plea, district courts are not obliged to grant plea withdrawal motions filed by defendants who realize, post-plea, the immigration implications of their conviction"); *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir.1988) (holding it was not error for trial court to fail to inform defendant that he might face deportation as result of his guilty plea). Courts in concluding that immigration consequences such as deportation are considered to be collateral consequences explain that what renders [a] plea's immigration effects "collateral" is not that they arise "virtually by operation of law," but the fact that deportation is "not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he [or she] has no responsibility. Gonzales, 202 F.3d at 27 (citing *Fruchtman v. Kenton*, 531 F.2d 946, 949 (9 Cir.1976)); see *Amador-Leal,* 276 F.3d at 514. Because the Court was under no duty to inform the Petitioner of the immigration implications arising from his guilty plea, there are no "circumstances compelling such action to achieve justice and to correct errors of the most fundamental character," Camacho-Bordes, 94 F.3d at 1173. Thus, the Petitioner has not met the burden of "articulate the fundamental errors and compelling circumstances for relief" as he is required to do under Camacho-Bordes and, therefore, it is not appropriate for this Court to grant the extraordinary relief that Petitioner has requested.

It should be noted that the Supervised Release section of the Judgment entered against Petitioner on August 12, 2005, advised,"[I]t is anticipated that the defendant will be deported by U.S. Immigration and Customs Enforcement following the term of imprisonment." (See Doc. 15, page 3). Also, on or about August 12, 2005, the Petitioner was released directly from federal

criminal custody into immigration custody after his sentencing hearing to answer pending removal charges. The removal charges illuminated the immigration consequences of Petitioner's guilty plea, namely, he was charged with removability and was ineligible for any discretionary relief from deportation based in part on having "been convicted of a crime involving moral turpitude."

Additionally, Petitioner became aware of the irreversible immigration consequences during administrative proceedings initiated immediately following his conviction. In spite of this, Petitioner did not seek any relief from this court until almost four years after his sentencing and after the limitations period for seeking relief under 28 U.S.C. § 2255.

It is clear that the court did make the Petitioner aware of the immigration consequences of his plea and the Petitioner's contention is without merit.

**C.  The Petitioner contends that there is no substantial evidence that he falsely claimed to be a citizen of the United States.**

The Petitioner contends that "he had no knowledge of what he was signing when he signed an I-9 employer verification form".  (Doc. 18-6, p. 3) He tries to support this contention with a self serving affidavit where he claims he never claimed to be a united states citizen (Doc. 18-6, para 11) and that he did not know if the social security number he used to gain employment belonged to a citizen or was just a made up number. (Doc 18-6, para 9)

The Eighth Circuit has stated that a writ of coram nobis may not be used as a substitute for an appeal. *Azzone v. United States*, 341 F.2d 417, 419 (8th Cir.1965) (per curiam). Additionally, Petitioner had a year from the date his conviction became final to bring a § 2255 action; yet Petitioner failed to timely seek § 2255 relief from his conviction. "[C]oram

nobis is a common law writ, and it is entirely inappropriate for the judiciary to invoke the common law to override limitations enacted by Congress, such as the period of limitations in § 2255." *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir.2002). The Petitioner offers no valid reasoning for having failed to attack his claims earlier other than he "was unaware of the consequences, had not exhausted his administrative appeals, and now is presently in danger of severe harm upon permanent removal from the United States." (Doc. 18, par. 20).  However, it is clear that the Petitioner was aware of the consequences.  It was stated on the judgment that it was expected that he would be deported (Doc. 18-2, page 3), the Petitioner was released to ICE custody after the plea (Doc. 16) and the Petitioner was ordered deported on October 5, 2006 by an Immigration Judge in Memphis, Tennessee. (Doc. 18-11) The judgment was entered on August 12, 2005 and the Petitioner knew of the consequences of his plea and had until August 12, 2006 to assert the claims that he now puts forth.  He choose not to do so and is now time barred from pursuing any claims under § 2255.

The Petitioner seems to contend that his time should be tolled because he was appealing his deportation order which was finally affirmed by the New Orleans Field Office on April 27, 2009. (Doc. 25-1, para. 6) A prisoner whose petition is belatedly filed may take advantage of equitable tolling where extraordinary circumstances beyond his control make it impossible for him to file a petition on time or when the action of the respondent lulled him into inaction. *Jihad v. Hvass*, 267 F.3d 803, 805 (8thCir. 2001). In general, neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. *Turner v. Johnson*, 177F.3d 390, 392 (5th Cir. 1999). See *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000,

cert. denied, 534 U.S. 863 (2001) (equitable tolling not warranted in case of unrepresented prisoner alleging lack of legal knowledge or legal resources). In addition  "[i]neffective assistance of counsel generally does not warrant equitable tolling." *Beery v. Ault*, 312 F.3d 948, 950 (8th Cir.2002).  The petitioner must also demonstrate he acted with due diligence in pursuing his petition. *E.J.R.E. v. U.S.*  453 F.3d 1094, 1098 (C.A.8 (S.D.),2006).  There is no provision for tolling the statute of limitations under 28 U.S.C. § 2255 while awaiting an immigration decision. Regardless, this is not an action under § 2255 and the Petitioner's probation time has expired and he has been release from probation. (Doc. 18-9).

**D. The Petitioner contends that because a Miranda violation occurred, his plea was not a knowing and intelligent waiver of right to a jury trial.**

The Petitioner asserts that he "was questioned without advising of Miranda, and despite his request to consult with his attorney; moreover, there appears to be misunderstanding generated by a failure to accurately translate the required information to the Petitioner during interrogation and prior to his plea".  (Doc. 18, para. 14)   These, of course, are claims that should have been presented on appeal.

Because Petitioner pled guilty to the offense, he has waived his rights to challenge the events prior to his plea, except as to jurisdiction. See *United States v. Todd*, 521 F.3d 891, 895 (8ᵗʰ Cir.2008); *United States v. Taylor*, 519 F.3d 832, 835 (8th Cir.2008). A valid guilty plea waives the right to raise claims on collateral review that officers failed to give a Miranda warning. See, e.g., *Smith v. United States*, 876 F.2d 655, 657 (8th Cir.1989) (finding defendant waived his claims on search and seizure, privilege against self-incrimination, and failure to disclose favorable evidence). For the reasons stated supra, Petitioner's guilty plea was

-10-

voluntarily, intelligently and knowingly, he is, therefore, barred from challenging the validity of his plea due to an alleged Miranda violation and for the reasons stated he is precluded from bringing any action under § 2255 for ineffective assistance of counsel.

### III.  Conclusion

Based upon the forgoing I recommend that the instant Petition for Writ of Error Coram Nobis be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 17th day of August 2009.


_____          /s/ J. Marschewski
                                              HONORABLE JAMES R. MARSCHEWSKI
                                              UNITED STATES MAGISTRATE JUDGE